**A. N. PORTER, Plaintiff in Error,**

v.

**MID–AMERICA PAVING CO., Inc., an Oklahoma corporation; Glenn E. Breeding, individually; Standard Insurance Company, an Oklahoma corporation; Smith Brothers Construction Company, a partnership composed of W. A. Smith and G. E. Smith, and the Western Casualty and Surety Co., a foreign corporation, Defendants in Error.**

**No. 36795.**

Supreme Court of Oklahoma.

July 10, 1956.

Rehearing Denied Oct. 9, 1956.

John G. Hervey, Ralph J. May, Oklahoma City, for plaintiff in error.

Edward H. Ferrish, Midwest City, for defendants in error Mid-America Paving Co., Inc., and Glenn E. Breeding.

T. R. Benedum, Norman, for defendant in error Standard Ins. Co.

Luttrell & Luttrell, Norman, for defendants in error Smith Brothers Const. Co., a partnership composed of W. A. Smith and G. E. Smith, and Western Casualty & Surety Co.

JACKSON, Justice.

This action was brought by plaintiff, A. N. Porter, against the defendants, Mid-America Paving Co., its president, Glenn E. Breeding, Smith Brothers Construction Company, and their respective bonding companies to recover on a contract of employment between the plaintiff and the defendant, Mid-America Paving Co. Judgment was rendered in favor of all the defendants and the plaintiff brings this appeal.

The defendant, Smith Brothers Construction Company as "Prime Contractor", had a contract with the State Highway Department for the construction of a certain road. That company subcontracted a portion of the construction to the defendant, Mid-America Paving Company.

After completing about 20% of its contract, it was apparent to Mid-America that it was threatened with a heavy financial loss. The current expense was so far exceeding the advancements due under the contract that all expense claims were being submitted to the prime contractor, Smith Brothers, for approval and payment, and the latter company was threatening to rescind Mid-America's contract and take over completion of the project.

Plaintiff had been recommended to Mid-America as a skilled engineer with long years of experience in road construction. In an effort to hold the contract and perhaps realize a profit from the venture, Mid-America, through its president, Glenn E. Breeding, approached plaintiff with an of-

fer of employment as its general superintendent of construction on the project.

Plaintiff was apprised of the situation with respect to the threatened loss but after looking over the project was of the opinion he could so manage the construction as to show a profit.

Pursuant to their tentative understanding, defendant Breeding drew up in letter form a proposed employment contract providing that plaintiff would receive as compensation for his services 50% of the net profits, if any, to be derived by Mid-America from the completion of the then unfinished portion of its project. It was therein provided that, in computing the net profit, a part of the expense to be charged against the unfinished portion of the job was the rental for equipment being used on the job. The equipment in question was leased from Butler-Sparks Equipment Company under a rental contract containing a purchase option clause whereby 94% of the rentals paid would be applied on the listed purchase price in the event Mid-America elected to purchase the equipment.

Plaintiff objected to the provision charging such rental payments as expense of construction when, in fact, 94% of such payments would be applied on the purchase price of the equipment if the purchase option were exercised. In that event, claimed the plaintiff, a portion of the profit in which he should share would be invested in the equipment so purchased. In order to meet plaintiff's objection in that respect defendant Breeding submitted, in a separate letter, an additional provision which made the contract acceptable to plaintiff. The supplemental provision, which forms the basis of this action, is as follows:

"Dear Mr. Porter:
"In connection with your services as general Superintendent on the Wetumka, Oklahoma job under contract with Smith Brothers Construction Co. and your completing the job as provided in agreement made with you under this date, it is understood as follows:

"1. In the event it should be found desirable upon the completion of this job to purchase any of the equipment used under rental agreements and credits are allowed to apply on the purchase price, you are to receive fifty per cent of all credits given on rentals paid and/or accrued after February 15, 1953.

"2. In the event you, or Mid-America Paving Co., Inc. should not desire to elect to take advantage of such credits for rentals paid by purchasing said equipment by each paying one-half the purchase price thereof (less credits due under the agreement), the other shall be privileged to purchase said equipment and pay the full price therefor (less the credits allowed), and receive full benefits of the credits allowed because of rentals paid thereon."

"Very truly yours,
"Mid-America Paving Co., Inc.
"By /s/ Glenn E. Breeding
"Glenn E. Breeding,
"President
"Acceptance
"/s/ A. N. Porter
"A. N. Porter"

Plaintiff assumed the duties of his employment as general superintendent of construction on March 17, 1953 and the job was completed under his supervision on June 30, 1953. The expense of completing the job exceeded the revenue and, instead of a profit, there was an additional loss in the amount of $6,646.75 chargeable to the period of plaintiff's employment; $6,466.73 of which was reflected in unpaid equipment rentals to Butler-Sparks, and the balance was in the form of other unpaid bills.

Soon after the job was completed, plaintiff inquired of Butler-Sparks whether they would allow him the credits under the option agreement. Plaintiff was informed by Butler-Sparks that they would allow him such credits but they further informed him that there was then due the sum of $6,466.73 for rent on the equipment which had accrued under the rental contract and that

payment of that amount was required before any credits would be allowed on the purchase price. Plaintiff refused to pay the past due rent and was unable to persuade Mid-America and Smith Brothers to pay it. Thereupon plaintiff brought this action for a money judgment for tortious breach of contract and wrongful conversion of chattels.

Plaintiff's argument in support of his contention that the court erred in rendering judgment in favor of the defendants can be summarized under the following propositions:

First: That under his contract with Mid-America he was entitled to exercise the option to purchase the equipment free of any claim for rent due and that Mid-America was obligated to plaintiff to keep the equipment rent paid up.

Second: That the statutory obligation of the prime contractor (Smith Brothers Construction Co.) under the provisions of 61 O.S.1951 § 1, as amended, and the bonds executed by the defendant bonding companies, guaranteed the payment of the equipment rental and that such obligations of the various defendants enured to plaintiff's benefit because of his contract with Mid-America.

Third: That the failure of the defendants, or any of them, to pay the equipment rentals promptly and before the purchase option expired, was a violation of his contract rights with Mid-America and constituted a technical conversion of such contract rights, which rendered said defendants liable to plaintiff in damages.

 It is apparent from an examination of the letters, when construed together, that plaintiff would be entitled to fifty per cent of any profit realized by Mid-America from the completion of the unfinished portion of its construction contract. This profit would result to plaintiff after all bills were paid. It is not contended, or apparent from the contract or testimony, that the equipment rentals should have any priority in payment.

Plaintiff's pay, in rentals, was contingent upon there being a profit in paid-up rentals which could be applied toward the purchase price of the rented machinery. The total revenue received under Mid-America's contract with Smith Brothers was applied to Mid-America's expense of construction. It must be remembered that these rentals were specifically set up in the first letter as a part of the cost of construction to be paid for out of revenues under the Mid-America contract with Smith Brothers. This provision in the first letter, and the fact that a large part of the profits might be in equipment rentals, was the argument advanced by plaintiff during their negotiations which resulted in the second letter. Under the contract it was necessary that plaintiff so manage the construction that all expense bills could be paid from revenue to be derived from Mid-America's contract with Smith Brothers. The contract is not susceptible of a construction that would require Mid-America to put more money into the venture than it received from its contract with Smith Brothers.

Plaintiff was not deprived of the privilege of exercising his option to buy the machinery. He could have acquired the machinery by paying the accrued rentals and meeting the other requirements. Having declined to do this within a reasonable time he forfeited whatever right he had to exercise his option.

Under plaintiff's second proposition he contends that he is entitled to relief under 61 O.S.1951 § 1, as amended, and the bonds submitted thereunder. The section referred to required Smith Brothers and Mid-America to file bonds conditioned that such contractors shall pay all indebtedness incurred for labor, material, rental or repair of machinery or equipment, furnished in the construction of said public improvement. These bonds were filed pursuant to the statute.

61 O.S.1951 § 2, as amended, provides that any person to whom there is due any sum for labor, material, rentals, or repairs furnished as stated in the preceding sections, or his assigns, may bring an ac-

tion on said bond for the recovery of said indebtedness.

The statute and bonds were designed to protect creditors. Plaintiff is not a creditor. There is no indebtedness or sums due him. The indebtedness for rentals was to Butler-Sparks Equipment Co., and not to the plaintiff.

Plaintiff's contention that the failure of defendants to pay Butler-Sparks before the purchase option expired constituted a conversion of his property rights is without merit. Plaintiff forfeited his interest in the property when he refused to pay the delinquent equipment rentals. Whatever action was taken by defendants after plaintiff had forfeited his option to acquire the property was not an invasion of plaintiff's property rights.

The judgment of the trial court is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and HUNT, JJ., concur.

WELCH and BLACKBIRD, JJ., dissent.